JAMES McGINNIS, BY NEXT FRIEND v. THE CANADA SOUTH-
ERN BRIDGE COMPANY.

*Railway injury to employee—Infancy—Risks of employment—Blocking
frogs—Verdict.*

The infancy of an employee does not of itself **give** him a cause of action against his employer for setting him at dangerous work, if it appears that he was of average intelligence, that his duties were explained to him when he entered upon the employment, and that he had in mind its dangers and the purpose to avoid them.

There is no breach of duty in employing a servant subject to the ordinary risks of the employment if the servant himself is aware of the risks and consents to encounter them.

An employer is not bound to make use of the newest mechanical appliances for the purpose of insuring the safety of his employees, especially if it does not appear that on the whole it would be advantageous to them. So, a railway company is not bound to block its frogs, particularly if it does not appear that in doing so it would not entail greater dangers than it would avert.

A verdict is no precedent and settles nothing but the immediate controversy to which it relates.

Error to Wayne.  Submitted October 17–18.  Decided
October 31.

Case.  Plaintiff brings error.  Affirmed.

*Frederick T. Sibley* and *Samuel T. Douglass* for appellant.  A master may be guilty of actionable negligence in
exposing persons to peril in his service which, though open
to observation, they, by reason of youth and inexperience,
do not fully understand and appreciate and are consequently
injured: Cooley on Torts 553; *Chic. & N. W. Ry. v. Bayfield* 37 Mich. 205; *O'Connor v. Adams* 120 Mass. 427;
*Coombs v. New Bedford Cordage Co.* 102 Mass. 572; when
a minor enters upon an employment he assumes the ordinary hazard incident to the work the same as an adult, but
the employer, when he takes him into the service, is bound
to notify him fully of the dangers and hazards connected
therewith, and of instructing him how to avoid them; and
even then the master will not have performed his duty
unless such instructions are so graduated to the youth, ignorance and inexperience of the servant as to make him fully
aware of the danger to him, and to place him, with reference to it, in substantially the same situation as if he were
an adult: Thompson on Negligence 978; *Sullivan v.
India Mfg. Co.* 113 Mass. 396; where the machinery used
is not defective either in its construction or for want of
proper repair, and where the usual and customary means are
used to guard against accidents, if wanting in either respect
there is an increased risk and if the servant is injured in consequence thereof the master must be responsible therefor:
*Swoboda v. Ward* 40 Mich. 420; the corporation is equally
chargeable, whether the negligence was in originally failing
to provide, or in afterwards failing to keep its machinery in
safe condition; the duty is essentially the same, and no
sound distinction can be established in favor of the defendant on this ground: *Ford v. Fitchburg R. R.* 110 Mass.
240; *Fuller v. Jewett* 80 N. Y. 46; *Painton v. Northern
Central R. Co.* 83 N. Y. 13; *Kain v. Smith* 80 N. Y. 458.

*Alexis C. Angell* and *Ashley Pond* for appellee. Railroad companies are not bound at their peril, to use only the best implements, the best machinery and the safest methods: *Mich. Cent. R. R. v. Smithson* 45 Mich. 219; *Ft. Wayne &c R. R. Co. v. Gildersleeve* 33 Mich. 133; his duty is to use such precautions to protect his servants as are customary with prudent men: *Swoboda v. Ward* 40 Mich. 422; *Smith v. St. Louis &c. R. Co.* 69 Mo. 32; *L. S. &c. Ry. Co. v. McCormick* 74 Ind. 440; an employer, in general, may use such methods and appliances as he chooses, and if the servant with a full knowledge of the method engages in the employment, he voluntarily assumes the risk and cannot recover: *Hayden v. Smithville Mfg. Co.* 29 Conn. 548; *Worder v. B. & O. R. R. Co.* 32 Md. 411; in entering a dangerous employment the servant accepts the risks properly incident to such employment: *Chicago & N. W. Ry. Co. v. Bayfield* 37 Mich. 211; *M. C. R. R. Co. v. Austin* 40 Mich. 247; *Quincy &c. Co. v. Kitts* 42 Mich. 34; *Day v. T. C. S. & D. Ry. Co.* 42 Mich. 523; the negligence of the employer in furnishing improper machinery or appliances, or in otherwise rendering the service needlessly perilous, is waived by the servant if, after comprehending the risk, he continues in the employment without protest or without promise of amendment by the employer: *Perigo v. R. R. Co.* 52 Ia. 276; *Davis v. D. & M. R. R. Co.* 20 Mich. 105; *St. Louis &c. Ry. Co. v. Britz* 72 Ill. 256; *Sullivan v. India Mfg. Co.* 113 Mass. 396; *Kelley v. Silver Spring Co.* 12 R. I. 112; *De Forest v. Jewett* 23 Hun 490; *Hughes v. Winona &c. R. R.* 27 Minn. 137; *Porter v. Hannibal &c. R. R.* 71 Mo. 66; *Kelley v. C., M. & St. P. R. R.* — Wis. —: 9 N. W. R. 819; *Clark v. St. P. & S. C. R. R.* id. 581: — Minn. —; *Gibson v. Erie Railway* 63 N. Y. 450; *Wells v. B., C. R. & N. R. R.* — id. —: 9 N. W. R. 364; *Rains v. St. Louis &c. Ry.* 71 Mo. 164; *Balt. &c. R. R. v. Stricker* 51 Md. 47; *Pittsburg &c. R. R. v. Sentmeyer* 92 Penn. St. 276; *Naylor v. C. & N. W. Ry.* — Wis. —: 11 N. W. R. 24; *Mansfield Coal Co. v. McEnery* 91 Penn. St. 185; *Woodley v. Railway* L. R. 2 Exch. Div. 385.

COOLEY, J.   The defendant corporation owns and operates a railroad across the Detroit river by way of Grosse Isle. The plaintiff, then twenty years and six months old, engaged in the service of defendant as switchman in December, 1879. He was inexperienced at the time, and the yard-master explained his duties to him.   In January, 1880, when he had been employed a little less than two months, his foot was caught in a "frog" while he was engaged about his work, and before he could extricate it an engine ran upon him, inflicting serious injury.   Plaintiff understood the danger from frogs before this accident took place, knew that injuries sometimes occurred from persons getting their feet caught in them, and testified that he tried to avoid the danger.   After the injury he claimed compensation from the railroad company, and by next friend instituted this suit.

In the trial court the plaintiff claimed to recover on two grounds:

1. That he, being immature and inexperienced, was sent by defendant into danger the full extent of which he did not comprehend, and that this was culpable fault on the part of the defendant which should render it liable for all injurious consequences.

2. That there was a well-known and simple device, the use of which would have precluded the danger from which the accident resulted, and that the defendant was negligent in duty to its servants in not procuring and making use of this device, and responsible by reason of that neglect for the injury.

The first ground was shown to be untenable by the plaintiff's own evidence.   He was past twenty years of age; was not shown to be wanting in average intelligence of those of his age, and his duties were explained to him when he entered upon the employment.   He besides understood the very danger into which he fell, and had in mind the purpose to avoid it.   It was thus made to appear by his own examination that he was not sent into unknown dangers, and that he was not exposed to risks which he, through immaturity or for any other reason, failed to comprehend.

To furnish support for the second ground, evidence was introduced that there is a simple device known as blocking the frogs, which is a protection against such accidents as the one from which the plaintiff suffered; that this consists in fitting into the frog a piece of wood cut to its shape; that this device at the time of the accident was in use on roads in Canada and was also used to some extent by railroad companies in the United States. It was not shown or claimed that the device was in general use; but plaintiff insisted that his evidence showed that its use would give effectual protection, and he claimed the right to go to the jury on the question whether defendant was not negligent in failing to adopt it. The circuit judge did not assent to this view, and directed a verdict for defendant.

The circuit judge in making this ruling was guided by the decision of this Court in *Fort Wayne, etc. R. R. Co. v. Gildersleeve* 33 Mich. 133. In that case an action was brought against a railroad company to recover damages for an injury to the plaintiff, who was a switchman in its service, and had been injured while coupling cars. The breach of duty charged against the railroad company was, that it allowed the use on its road of cars with coupling apparatus of different heights, the effect of which was to expose switchmen to peculiar perils. It was while coupling two of unequal height that the plaintiff was injured. In the decision of the case in this Court it was shown that the question involved was not one peculiar to railroad companies, but that it concerned the employer of labor in every branch and kind of business, and that to sustain the plaintiff's case it would be necessary to hold that the employer is under obligations to his servants under all circumstances to make use of the safest known appliances and instruments, and is responsible for any failure to discard what is not such and to supply its place with something safer. Such a doctrine it was said would almost make the employer the guarantor of the servant's safety while in his service, and would be destructive of the well-established and beneficial rule that

the servant accepts the risks of the customary dangers of the service when he accepts the employment.

The plaintiff endeavors to distinguish this case from that of Gildersleeve, but the distinction is not obvious. In this case as in that the *gravamen* of the complaint is that the defendant failed to provide itself with the safest known devices and appliances in its business, and that the plaintiff was injured in consequence. But in both cases it appeared that plaintiff knew and understood what was supplied, and that he voluntarily assumed the employment and encountered the risk for the compensation offered. No fraud, no deception and no concealment was charged against the defendant in either case.

In one particular this case falls short of that made by Gildersleeve. It was made clearly apparent in his suit that the coupling apparatus ought to be on the same level, and the only excuse of the railroad company for making use of a car whose coupling apparatus was not on a level with that of others, was that they had the car on hand. It seemed plain that it would be desirable to discard it if the defendant could afford to do so. But in this case the evidence falls short of making a *prima facie* case that it would be desirable to adopt the device of blocking the frogs.

There was evidence which tended to show that this device was calculated to prevent such accidents as the plaintiff had met with, and that to some extent it had been brought into use for that purpose. The plaintiff's evidence showed, however, that the use had not gone very far, and that nearly all the railroad companies of the country had failed to adopt it. As railroad service is in the hands of experts, and the managers are greatly interested in protecting their men against injury, this failure on their part to adopt and use so simple a device is a very pregnant fact, and suggests that there must be reasons for it that are controlling. But as this case was disposed of on the plaintiff's own showing, and without calling upon the defense for their reasons, we cannot judicially know what they are, nor could the court below act upon them.

But the court below could not fail to observe that the plaintiff made no attempt to prove that the device of blocking the frog was a desirable device to adopt in the management of railroads. He did offer evidence that it tended to diminish or prevent a particular danger; but he did not go further. It is consistent with all that was shown by him that the adoption of this device would introduce new dangers, more serious than those it would guard against, and that for this reason it was neither prudent nor humane to adopt it. And the plaintiff had no right to ask the court and jury to regard a single consequence of the adoption of the device, and to condemn the management of the railroad company on so narrow a view of its conduct, but it was his business to show that on a survey of the whole field the use of the block was prudent, and that it guarded against dangers in one direction without the introduction of perils in another. Without that showing it seems very manifest that, as the evidence stood, there was no case made for the adoption of the proposed device.

Railroading is at least a business with many dangers, and scarcely any machine, implement or expedient made use of in it but is liable at some times and under some circumstances to imperil human lives. Suppose the block had been made use of and an accident had occurred which was thought to be attributable to it; how on the plaintiff's theory would the defendant have excused itself for adopting it? A jury verdict in favor of its use in a previous case could be no protection, for a verdict makes no precedent, and settles nothing but the immediate controversy to which it relates: the next jury on precisely similar facts is at liberty to find directly the contrary. The defendant would therefore be compelled to defend its adoption of the block by showing that it tended to make the management of trains more safe. But if the plaintiff in the suit were to proceed to show—what fully appears in this case—that though the device had been known for several years the experts in charge of railroads the country over, naturally solicitous as they must be, on grounds of personal interest if not of

humanity, to diminish the risks to life, had failed to be convinced of the expediency of making use of the block, this showing would have made out a case against the defendant which could not well have been answered. The *prima facie* showing that the device had been hastily if not heedlessly adopted would certainly have been very strong; and if the two cases charging respectively negligence in rejecting and then in adopting the same device could go to successive juries, we might witness the instructive result of a verdict against the defendant in both. But such a result is inconsistent with a proper administration of definite rules of law and justice. It is much safer to hold that, when it appears the employé is aware, as the plaintiff was, of the risks to which he exposes himself in the service, and consents to encounter them, his employment subject to the risks cannot be treated as a breach of duty.

In *Lake Shore etc. R. W. Co. v. McCormick* 74 Ind. 440, the same allegation of breach of duty was made as in this case, and it was held not supported by the facts. The principle of the decision is familiar in this State, and is supported by the following among other cases: *Chicago etc. Ry. Co. v. Bayfield* 37 Mich. 211; *Swoboda v. Ward* 40 Mich. 420; *Quincy Mining Co. v. Kitts* 42 Mich. 34; *Mich. Cent. R. R. Co. v. Smithson* 45 Mich. 219. It is also of general acceptance elsewhere.

The judgment must be affirmed with costs.

The other Justices concurred.